**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. | ) ) ) ) | |
| | ) | No.  08 cv 4502 |
| Plaintiffs, | ) | |
| v. | ) ) | Judge Andersen |
| MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, | ) ) ) ) | Magistrate Judge Mason |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Ameristar Casinos, Inc. and Ameristar Casino Council Bluffs, Inc. ("Ameristar") seek an Order enjoining the defendant Michael Kolar from misleading Ameristar's customers who mistakenly call one of Kolar's toll free telephone numbers, which is only one digit removed from Ameristar's toll free number.  Kolar has adopted a practice of misleading those customers by pretending to represent Ameristar, and then subjecting them to various deceptions, all of which are designed to harm either the customers, Ameristar, or both. Kolar's misconduct constitutes trade disparagement, defamation, deceptive trade practices, and tortious interference with Ameristar's customer relationships. Money damages are inadequate redress for the harm that Kolar's misconduct is causing to Ameristar and its customers.  For all of the reasons that follow, a preliminary injunction should issue.

**I.     BACKGROUND**

**A.     *Ameristar's Business, Trademarks, and Phone Number.***

For over fifteen years, Ameristar has owned and operated hotels, casinos and related entertainment complexes throughout the United States. Ameristar, through its wholly-owned

subsidiaries, operates seven casino, hotel and entertainment facilities: Ameristar Casino East Chicago (located in East Chicago, Indiana), Ameristar Casino Council Bluffs (located in Council Bluffs, Iowa), Ameristar Casino Kansas City (located in Kansas City, Missouri), Ameristar Casino St. Charles (located in St. Charles, Missouri), Ameristar Casino Vicksburg (located in Vicksburg, Mississippi), Cactus Pete's Resort Casino (located in Jackpot, Nevada), and Ameristar Casino Black Hawk (located in Black Hawk, Colorado). (Affidavit of Brian Repsher, ¶ 3, attached as Exhibit A.)

Ameristar owns various registered trademarks which use the name "Ameristar" or which use the phrase "More Casino. More Fun." (collectively, the "Ameristar Marks"). (Complaint., ¶¶ 6-10.) Ameristar spends tens of millions of dollars each year marketing the Ameristar Marks in connection with its casinos and hotels through a variety of methods, including, but not limited to, television advertisements, radio advertisements, newspaper advertisements, internet, and direct mailers. (Ex. A, Aff. of Brian Repsher, ¶ 4.)

As part of its marketing effort, in order to provide its customers with an easily remembered toll free reservation number, Ameristar uses the mnemonic, 1-866-MOREFUN, which contains a portion of its registered "More Casino. More Fun" trademark. (*Id.*, ¶ 5.). Ameristar's toll free number translates to 1-866-667-3386 ("Ameristar's Phone Number"). Customers who call the toll free number may navigate through a menu that allows them to reach a live representative and make reservations for hotel accommodations, entertainment, and dining at any of Ameristar's seven locations. (*Id.*, ¶ 6.)

**B.    *Kolar's Business and Phone Number.***

Kolar is not associated with Ameristar in any way. Kolar operates a tax preparation business called "Mr. Refund." Kolar uses several  telephone numbers in his business, one of which, 1-866-MRREFUND,  translates to 1-866-677-3386 ("Kolar's Phone Number").  (*Id.*, ¶

8.)  Ameristar's Phone Number (1-866-667-3386) differs from Kolar's Phone Number (1-866-677-3386) by only one digit.

### C.    *Kolar's Wrongful Conduct.*

Because of the similarities between Ameristar's Phone Number and Kolar's Phone Number,  Ameristar customers occasionally dial Kolar's Phone Number by mistake when they are trying to reach Ameristar.  (*Id.*)

Ameristar first became aware of this in 2006 when Kolar contacted Ameristar and demanded that Ameristar pay him money for receiving these misdialed calls.  Kolar specifically threatened that if Ameristar did not pay him, he would: (a) refer Ameristar's customers to a competing casino, (b) take false hotel room reservations from the callers, and (c) get "nasty" with the callers.  (*Id.*, ¶ 8.)  Kolar made this demand in an attempt to extort money from Ameristar, which has no legal obligation to pay Kolar for misdialed telephone calls.  *See Employee Network, Inc. v. Faircall Corporation*, 13 A.D.3d 773, 774 (N.Y. App. 2004), in which the court  held that defendant had no duty as a matter of law to protect plaintiff from actions of third party consumers who inadvertently dialed plaintiff's telephone number in an attempt to call defendant.  Ameristar did not agree to Kolar's demands.  (*Id.*, ¶ 8.)

When Ameristar refused to pay, Kolar made good on his threats.  Specifically, Ameristar began to receive reports that Kolar was misleading Ameristar's customers and potential customers into believing Kolar was an agent of Ameristar. (*Id.*, ¶ 9; Affidavit of Diane Jacobson, ¶ 4, attached as Exhibit B; Affidavit of Doris Sanders, ¶ 4, attached as Exhibit C; Affidavit of Melissa Cooprider, ¶¶ 4-8, attached as Exhibit D; Affidavit of Lisa Young, ¶ 3, attached as Exhibit E.)  Ameristar received reports that Kolar was making the following false representations to Ameristar customers and potential customers: (a) that Kolar was an Ameristar representative and could take the customer's hotel reservation; (b) that Kolar was "Mr. Ameristar"; (c) that

Ameristar does not honor any of the offers extended through promotional materials such as free rooms or discounted room rates; (d) that Ameristar's coupons were "no good" and Ameristar only sends out the promotions to lure problem gamblers; (e) that the accommodation rates in Ameristar's promotional materials were not correct; and (f) that one or more of Ameristar's hotels were closed because they burned down.   Kolar also purported to offer customers reservations in suites that did not exist.  (Ex. A, Aff. of Brian Repsher, ¶ 9; Ex. B., Aff. of Diane Jacobson, ¶ 4; Ex. C, Aff. of Doris Sanders, ¶ 4; Ex. D, Aff. of Melissa Cooprider, ¶¶ 4-8; Ex. E, Aff. of Lisa Young, ¶ 3.)   Ameristar also received reports that Kolar had pretended to be an Ameristar customer service representative and: (a) acted in a rude and insulting manner to customers; (b) obtained credit card information and other personal information from customers under the guise of making reservations for the customers; and (c) purported to accept reservations and even provided customers with fake reservation confirmation codes.  (Ex. A, Aff. of Brian Repsher, ¶ 9; Ex. B., Aff. of Diane Jacobson, ¶ 4; Ex. C, Aff. of Doris Sanders, ¶ 4; Ex. D, Aff. of Melissa Cooprider, ¶¶ 4-8; Ex. E, Aff. of Lisa Young, ¶ 3.)

On June 1, 2006, Ameristar's legal department sent a "cease and desist" warning to Kolar via certified mail.  Kolar refused delivery of the letter. Ameristar resent the letter via facsimile on July 27, 2006 and received confirmation of that transmission. (Ex. A, Aff. of Brian Repsher, ¶ 10, Compl. at Ex. A.)

For about a year after sending the July 27, 2006 cease and desist letter, Ameristar stopped receiving complaints about Kolar's misconduct.  Unfortunately, Kolar has recently resumed his activities.

For example, as a result of Kolar's apparent practice of using Ameristar's marks to impersonate Ameristar personnel and issue phony reservations, guests have appeared at Ameristar's hotels believing that they had made Ameristar hotel reservations through Kolar, only

to learn upon arrival that they in fact had no such reservations, and that the "confirmation code" they had received from Kolar was a fake. (Aff. of Melissa Cooprider, ¶¶ 4-5.).

On July 9, 2008, Ameristar received a complaint from a patron who had attempted to call Ameristar's Phone Number to find out whether an Ameristar facility accepted checks. (Ex. E, Aff. of Lisa Young, ¶ 3.) Unfortunately, this customer inadvertently called Kolar, who belittled her, asked her how much money she had in her checking account, and told her that she should not write checks if she did not have enough money to cover the amount. (*Id.*) Kolar told her that people write bad checks to Ameristar all the time and that "we" end up losing money because of this. (*Id.*) The customer's mother redialed the number and asked Kolar to identify himself. He finally identified himself as "Mr. Refund." Kolar then told the customer that he was a billionaire who was not used to dealing with "trailer trash" like her. (*Id.*)

There can be no doubt that Kolar is the person responsible, because on June 2, 2008, Kolar called Ameristar Casino Council Bluffs and spoke to several Ameristar employees. Kolar said that he was the multimillionaire CEO of Mr. Refund and that he was tired of Ameristar customers calling his "f—king phone." (Aff. of Diane Jacobson, ¶ 4.) He also said "I'm giving everyone I talk to reservations for your king suite, how do you like that?" (*Id.*) Kolar — who according to his web site is a CPA — left his name and phone number and said "Don't send me any subpoenas." (*Id.*) Kolar's statements show that he is well aware of the legal consequences of his actions.

In short, after unsuccessfully attempting to extort money from Ameristar, Kolar has embarked on a campaign to mislead and harass Ameristar's customers, and deliberately harm Ameristar's business. Besides harming innocent customers, Kolar's misconduct is seriously damaging Ameristar's business, reputation and goodwill, which is exactly what Kolar seems to

intend. Accordingly, Ameristar seeks a preliminary injunction in order to prevent any further damage to Ameristar's business, reputation and goodwill.

## II.    ARGUMENT

Under Seventh Circuit law, courts consider four factors in determining whether to issue a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) whether there is an adequate remedy at law if the injunction does not issue; (3) whether the injury to the plaintiff outweighs any harm the injunction would cause the defendant; and (4) whether the injunction will disserve the public interest. *See Fox Valley Harvester v. AO Smith Harvester Products, Inc.*, 545 F.2d 1096 (7th Cir. 1976); *see also Reinders Brothers v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 48 (7th Cir. 1980). The Seventh Circuit has explained that "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor." *Rowland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir. 1984).

As demonstrated below, Ameristar has a reasonable likelihood of success on the merits. Kolar's conduct constitutes trade disparagement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trade disparagement under 815 ILCS 510/2(a)(8) and the common law of Illinois, deceptive trade practice under 815 ILCS 510/2(a)(2), (5), and (12), defamation, and tortious interference with a prospective economic advantage. Ameristar has no adequate remedy at law, and the injury to Ameristar if Kolar is permitted to continue his misconduct far outweighs any harm that the requested injunction might cause to Kolar. Finally, the public interest will not be disserved, but on the contrary will be promoted, by granting the injunction requested by Ameristar.

**A.    Ameristar is Likely to Prevail on the Merits.**

**1.    <u>Trade Disparagement under the Lanham Act, 15 U.S.C. § 1125(a)</u>**

Section 43(a) of the Lanham Act prohibits trade disparagement. *See* 15 U.S.C. § 1125(a);

Jerome Gilson, Gilson on Trademarks, § 7.02[6][b][i][F] (2008 Ed.)(which states, "Under the

Trademark Law Revision Act of 1988 ("TLRA"), disparagement of a company's products or

services and its commercial activities by another's false or misleading representations or

descriptions of fact became actionable under Section 43(a)").    A defendant is liable under

Section 43(a) of the Lanham Act if he "misrepresents the nature, characteristics, qualities, or

geographic origin of his or her *or another person's* goods, services, or commercial activities." 15

U.S.C. § 1125(a) (emphasis added).    Further, the Lanham Act authorizes courts to grant

injunctions "according to the principles of equity and upon such terms as the court may deem

reasonable .... to prevent a violation of subsection (a), (c) or (d) of section 43." 15 U.S.C. §

1116; *see also J.K. Harris & Company, LLC v. Kassel*, 253 F.Supp.2d 1120, 1128 (N.D. Cal.,

2003)(which states, "a party who has been or is likely to be injured as a result of the false

statement, either by direct diversion of sales from itself to another or by a lessening of the

goodwill associated with its products, may seek an injunction").

In order to succeed on its trade disparagement claim under the Lanham Act, Ameristar

must prove the following elements:

> (1) the defendant has made a false or misleading statement of fact concerning his
> product or service or another's; (2) the statement actually or tends to deceive a
> substantial portion of the intended audience; (3) the statement is material in that it
> will likely influence the deceived consumer's purchasing decisions; (4) the
> statement was introduced into interstate commerce; and (5) there is some causal
> link between the challenged statement and harm to the plaintiff.

*Melea Limited v. Quality Models Ltd.*, 345 F.Supp.2d 743, 759 -760 (E.D. Mich., 2004); *see*

*also U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 -923 (3rd

Cir., 1990); Jerome Gilson, Gilson on Trademarks, § 11.07[4] (2008 Ed.).

In this case, Kolar has clearly made false or misleading statements of fact about Ameristar's products or services that actually deceived or tended to deceive consumers. Because customers who have been deceived by Kolar have actually shown up at Ameristar's casinos believing that they had reservations, it is clear that Kolar actually deceived those customers. It is also likely that other customers have been similarly deceived by Kolar's false representations as to Ameristar's room rates, coupons not being valid, casinos having burned down, and so on. Because the false representations were made over interstate phone lines, they were made in interstate commerce. See e.g., *PGC Property LLC v. Wainscott/Sagaponack Property Owners, Inc.*, 250 F. Supp.2d 136, 141 (E.D.N.Y., 2003) (the in commerce requirement "may be satisfied by use of the mark in connection with the goods or services distributed by the trademark holder"). Lastly, Ameristar has suffered damage as a result of Kolar's actions.

It is well settled that the Lanham Act can be violated by impersonating another entity over the telephone. For example, in *U.S. News and World Report, Inc. v. Campaigner Publications, Inc.*, 222 U.S.P.Q. 123 (D.D.C. 1982), the defendants misrepresented themselves over the telephone as reporters for the plaintiff in order to obtain information from news sources. *Id.* at 124 The plaintiff alleged that the defendant's conduct violated Section 43(a) of the Lanham Act and sought a preliminary injunction. The court granted the preliminary injunction because the defendants' use of the plaintiff's name over the phone to reporters had caused confusion and deception, and the reputation of plaintiff had been harmed. *Id. See also J.K. Harris & Company*, 253 F.Supp.2d at 1130 (granting preliminary injunction based upon competitor's use of the plaintiff's trademark in a false manner on the competitor's website).

Similar to the plaintiff in *U.S. News and World Report*, Ameristar has established that Kolar's use of the Ameristar Marks over the phone to potential customers of Ameristar — such as his references to "Mr. Ameristar" — has caused confusion and deception of consumers, and

8

that Ameristar has been harmed.  Accordingly, Ameristar is likely to succeed on the merits of its trade disparagement claim under  Section 43(a) of the Lanham Act.

### 2.    Trade Disparagement under 815 ILCS 510/2(a)(8) and Common Law

Under Illinois law, "'trade disparagement' refers to remarks that disparage the quality of one's goods or services." *American Wheel & Engineering Co. v. Dana Molded Products, Inc.*, 132 Ill. App. 3d 205, 211 (Ill. App. Ct. 1st Dist. 1985).  A person engages in trade disparagement when he "disparages the goods, services or business of another by false or misleading representations of fact."  815 ILCS 510/2(a)(8); *American Wheel & Engineering Co.*, 132 Ill. App. 3d at 211; *Crinkley v. Dow Jones & Co.*, 67 Ill. App. 3d 869, 877 (Ill. App. Ct. 1978) (which states, "words which criticize the quality of one's goods or services will give rise to a cause of action for disparagement.").  In order to succeed on a claim of disparagement, a plaintiff must present evidence that the defendant made a statement that "amounts to a 'false and demeaning statement regarding the quality of [the plaintiff's] goods and services.'" *Uline, Inc. v. JIT Packaging, Inc.*, 437 F. Supp. 2d 793, 804 (N.D. Ill. 2006).

Injunctive relief is specifically authorized in instances of trade disparagement under the Illinois Deceptive Trade Practices Act.  *See* 815 ILCS 510/3.  See, e.g., *Morton Grove Pharms., Inc. v. Nat'l Pediculosis Ass'n*, 494 F. Supp. 2d 934 (N.D. Ill. 2007).

In this case, Kolar has made a variety of misleading statements of fact that disparage the services and business of Ameristar.  815 ILCS 510/2(a)(8).  *See*, e.g. Kolar's representation that Ameristar promotional coupons are scams or not valid.  Ameristar thus has a reasonable likelihood of success on its claim for trade disparagement under 815 ILCS 510/2(a)(8).

### 3.    Deceptive Trade Practices under 815 ILCS 510/2(a)(2), (5), and (12)

"Essentially, any conduct in a business which creates a likelihood of consumer confusion or misunderstanding is potentially actionable under [815 ILCS 510/2]." *Unique Coupons, Inc. v.*

*Northfield Corp.*, 2000 U.S. Dist. LEXIS 6767, *9 (N.D. Ill. May 11, 2000).  815 ILCS 510/2

provides that:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:…
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;…
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2.

In this case, Kolar has violated 815 ILCS 510/2(a)(2), (5), and (12), as his false

representations are likely to cause confusion or misunderstanding regarding the source,

sponsorship, approval, certification, and/or affiliation of Kolar with Ameristar's services.

Ameristar is therefore likely to prevail on its claim under the Illinois DTPA.

For example, in the case of *Empire Home Services, Inc. v. Carpet America, Inc.*, 653 N.E.

2d 852 (Ill. App. 1995), the plaintiff alleged that the defendant-- a company with a telephone

number that differed by only one digit from the plaintiff's telephone number—violated the

DTPA because it misled callers who mistakenly called the defendant into believing that they had

reached the plaintiff.  In that case, the defendant falsely told the callers that they had in fact

reached the plaintiff, and then referred the callers to a competitor.  The Illinois Court of Appeals

held that the plaintiff had stated a valid claim under the DTPA, because the defendant had caused

confusion as to the source or approval of its or the plaintiff's services, and had caused confusion

as to the defendant's affiliation with the plaintiff.  All of the same factors are present here, and

Ameristar is thus likely to prevail on its claim under the DTPA.

Similarly, in *American Airlines, Inc. v. A 1-800-A-M-E-R-I-C-A-N Corp.*, 622 F. Supp. 673 (N.D. Ill. 1985), the plaintiff owned the trademark AMERICAN AIRLINE. *Id.* at 674. The defendant had its similar phone number 1-800-AMERICAN listed in the airline section of the yellow pages. *Id.* at 675-676. The defendant then diverted callers who mistakenly called its number to other airlines. *Id.* at 680-681. The court granted the preliminary injunction, finding that the defendant's actions were deceptive and misleading, in violation of 815 ILCS 510/3. *Id.*

Just as in the *Empire Home Services* and *American Airlines* cases, Kolar's actions in taking advantage of consumers' telephone dialing errors to mislead and confuse those consumers violate the Illinois DTPA. Accordingly, Ameristar has a reasonable likelihood of success on its claim against Kolar for deceptive trade practices under 815 ILCS 510/2(a)(2), (5), and (12).

### 4.    **Defamation**

In order to prove a claim for defamation, "a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Publ. Co.*, 221 Ill. 2d 558, 579 (Ill. 2006). Typically, "[a] defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Id.* Under Illinois law, "[a] publication is defamatory per se if it is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary and extrinsic facts are not needed to explain it." *Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 969 (S.D. Ill. 2003). With regard to corporations, "three types of statements may be defamatory per se: (1) statements that impute the commission of a crime, (2) statements that impute an inability to perform or want of integrity in discharge of duties, and (3) statements that impute a lack of ability in the corporation's trade." *Id.*

Kolar's statements about Ameristar readily qualify under the latter two tests. For example, in *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1 (Ill. 1992), the plaintiff was the promoter of a classic cartoon festival, the proceeds from which were to benefit a charitable foundation. *Id.* at 6. After an interview with the plaintiff over the radio, the defendant disc jockey announced that plaintiff and his festival were a scam. *Id.* at 7. The court held that those statements could be defamatory per se because "a statement which implies that a professional promoter is promoting a fictitious event undermines the promoter's credibility with the public and thereby damages his professional reputation." *Id.* at 14.

Similarly, in this case Kolar's false representations are defamatory *per se* because they impute a want of integrity and undermine Ameristar's business reputation. Accordingly, Ameristar has a reasonable likelihood of success on its claim against Kolar for defamation.

**5.    Tortious Interference with a Prospective Economic Advantage**

Under Illinois law, in order to establish a claim for tortious interference with prospective economic advantage, a plaintiff must prove:

> (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.

*Fellhauer v. Geneva*, 142 Ill. 2d 495, 511 (Ill. 1991).

Ameristar has a reasonable expectation of entering into business relationships with customers who try to call its 1-800-MOREFUN number. Indeed, the principal purpose of that number is to allow customers who want to do business with Ameristar to make reservations at Ameristar facilities. That purpose is being intentionally thwarted by the Defendant. This is sufficient to establish a claim under Illinois law.

For example, in *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E. 2d 33 (Ill. App. 1989), the plaintiff car dealer sued a competitor for printing a brochure that reported false information about the price of the car dealer's services. *Id.* at 526. The plaintiff alleged that the false statements caused the plaintiff to lose business that it would otherwise have received. *Id.* On appeal of a dismissal of the plaintiff's claim, the appellate court held that the car dealer satisfied all four of the essential elements for a tortious interference claim. *Id.* at 528-530. While the trial court had held that the plaintiff had not alleged a reasonable expectancy of entering into a specific business relationship, the appellate court held that the plaintiff's assertion that 80% of the people who bought cars from its dealership came back for service was sufficient to show a reasonable expectancy of entering into valid business relationships in the future. *Id.* at 529.

Similar to the plaintiff in the *Downers Grove* case, Ameristar has a reasonable expectation of entering into or continuing business relationships with at least a reasonable percentage of the customers who attempt to call Ameristar's Phone Number. Kolar was well aware of this expectancy and purposefully interfered with it, and Kolar's purposeful interference has caused damage to Ameristar. Ameristar therefore has a reasonable likelihood of success on its claim against Kolar for tortious interference with prospective economic advantage.

**B.     If Kolar is not Enjoined, Ameristar will Suffer Irreparable Harm for Which it has No Adequate Remedy at Law.**

The Lanham Act, the Illinois Deceptive Trade Practices Act, and the common law all provide for the entry of an injunction upon proper proof. With respect to the Lanham Act claim, "[i]t is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss.". *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002); see also, *Abbott Labs. v. Mead Johnson &*

*Co.,* 971 F.2d 6, 16 (7th Cir. 1992) (regarding the "well established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss").

Not only is injunctive relief presumptively appropriate for violations of the Lanham Act, Kolar's actions have caused and will continue to cause Ameristar to lose both reputation and customer goodwill, which are both forms of harm for which it is well established that money damages are inadequate.

**C.    The Harm to Ameristar if the Preliminary Injunction is Not Granted Outweighs the Harm to Kolar if this Court Grants a Preliminary Injunction.**

The harm that Ameristar will suffer in the absence of an injunction is greater than the harm to Kolar from granting it. The injunction Ameristar seeks will not have any harmful effect on Kolar at all. Ameristar is simply asking the Court to require Kolar to stop deceiving and abusing Ameristar's actual and prospective customers. The requested injunction will not cost Kolar a dime, or cause him to lose a single customer. Accordingly, the balance of harm tips strongly in Ameristar's favor. *See Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir., 1982) (where the Seventh Circuit stated "[i]f the harm to the plaintiff from denial of the preliminary injunction would be very great and the harm to the defendant from granting it very small, then the injunction should be granted even if the defendant has a better chance of prevailing on the merits than the plaintiff, provided the plaintiff's chances are better than negligible"); *see also Cronin v. U.S. Dept. of Agriculture*, 919 F.2d 439, 445 (7th Cir.,1990).

**D.    The Public Interest will Not be Disserved by the Granting of the Injunction.**

Finally, the public interest will not be disserved by the injunction that Ameristar seeks. On the contrary, the public interest will be served by it because the public will be protected from further deception. *See Ferrell v. U.S. Dept. of Housing and Urban Development*, 186 F.3d 805, 811 (7th Cir.,1999)(where the Seventh Circuit stated "[t]he court must also consider the public

interest by weighing the effect that either granting or denying the injunction will have on nonparties").

Kolar's misconduct harms not just Ameristar, but the public as well. Kolar has been intentionally deceiving and harassing innocent customers whose only offense is that they have inadvertently reached one of Kolar's phone numbers. This is not something the public should have to endure.

## III.  CONCLUSION

For all the foregoing reasons, Ameristar respectfully requests that this Court enter an Order:

A.    Enjoining Kolar, his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from using the Ameristar Marks or doing any acts or things likely to induce the belief on the part of the public, including Ameristar's customers or potential customers, that Kolar is in any way affiliated, connected, or associated with Ameristar;

B.    Enjoining Kolar, his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from making any statements to individuals that inadvertently call Kolar's Phone Number that could cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, certification, and/or affiliation of Kolar with Ameristar's services;

C.    Enjoining Kolar, his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, from disparaging Ameristar and its business activities to individuals that call Kolar's Phone Number;

D.    Enjoining Kolar, his officers, agents, servants, employees, and attorneys, and all

other persons in active concert or participation with them, from falsely

representing himself to be affiliated in any way with Ameristar; and

E.    For all other appropriate relief.

Respectfully submitted,

**AMERISTAR CASINOS, INC. and
AMERISTAR CASINO COUNCIL BLUFFS, INC.,
Plaintiffs**


By: /s/ John D. Burke
       One of their Attorneys


John D. Burke (ARDC No. 06203918)
ICE MILLER LLP
200 W. Madison Street, Suite 3500
Chicago, IL 60606-3417
(312) 726-1567

Jay G. Taylor
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100

## CERTIFICATE OF SERVICE

John D. Burke, an attorney, certifies that on August 22, 2008, he served a copy of Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction by electronic mail and U.S. Mail, property postage prepaid, upon:

Donald W. Devitt
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Suite 600
Chicago, Illinois 60603
*ddevitt@scopelitis.com*


_____/s/ John D. Burke_____
John D. Burke

C/69704.1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. )<br><br>Plaintiffs, )<br><br>v. )<br><br>MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, )<br><br>Defendant. ) | No.<br><br>Judge:<br><br>Magistrate Judge |

### AFFIDAVIT OF BRIAN REPSHER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Brian Repsher, being first duly sworn on oath, certify that the following statements are true and correct.

1. I have been employed by Plaintiff Ameristar Casinos, Inc. ("Ameristar") in various marketing positions since 1997. Since 2003, I have served as Ameristar's Vice President of Research and Analysis.

2. My responsibilities as Vice President of Research and Analysis include, but are not limited to, directing and overseeing the design and implementation of Ameristar's marketing and advertising to its database of known patrons as well as to the general public.

3. Through its wholly owned subsidiaries, Ameristar operates seven casinos and entertainment facilities: Ameristar Casino East Chicago (located in East Chicago, Indiana), Ameristar Casino Council Bluffs (located in Council Bluffs, Iowa), Ameristar Casino Kansas City (located in Kansas City, Missouri), Ameristar Casino St. Charles (located in St. Charles,

Missouri), Ameristar Casino Vicksburg (located in Vicksburg, Mississippi), Cactus Pete's Resort Casino (located in Jackpot, Nevada), and Ameristar Casino Black Hawk (located in Black Hawk, Colorado).

4.   Ameristar markets its casinos through a variety of methods, including, but not limited to, television advertisements, radio advertisements, newspaper advertisements, internet, and direct mailers. Ameristar spends tens of millions of dollars each year advertising its casinos. Ameristar mails over five million direct mail pieces per year.

5.   In order to provide its customers with a memorable toll free reservation number, Ameristar operates a toll free number, 1-866-MOREFUN, which uses a portion of the  its registered "More Casino More Fun" trademark.  Ameristar began using the 1-866-MOREFUN number in April, 2006.

6.   Ameristar uses the 1-866-MOREFUN telephone number as its main telephone number through which a patron can reach any of our seven casino and entertainment facilities. Callers who call the 1-866-MOREFUN number are connected to an automated recording asking them to press "1" for Black Hawk, press "2" for Council Bluffs, etc.  After selecting the location of their choice, callers are connected to a live representative at the selected location for information or hotel reservations.

7.   Since early 2006, nearly all of Ameristar's advertisements which reference a phone number use the 1-866-MOREFUN number.

8.   Mike Kolar called Ameristar's corporate offices in May, 2006 and spoke to several Ameristar representatives.  He claimed that several times per week, Ameristar customers would misdial the 1-866-MOREFUN number and instead reach Kolar at 1-866-MRREFUND.  Kolar threatened that if Ameristar did not pay him money for receiving misdialed calls, he would: (a)

refer Ameristar's customers to a competing casino, (b) start taking false hotel room reservations from the callers, and (c) get "nasty" with the callers. Ameristar did not agree to Kolar's extortionate demands.

9. In late May and June, 2006, Ameristar learned that Kolar was following through with his threats to engage in such tortious and unlawful conduct. Specifically, Ameristar received reports that Kolar was telling Ameristar customers who accidentally misdialed Kolar's toll free number that Ameristar's hotel coupons were a hoax. Kolar would sometimes identify himself as "Mr. Ameristar" to these callers. He would tell callers that Ameristar's hotel rooms cost $250 and that "we don't want you to come here anyway." True and correct copies of contemporaneous Ameristar emails and documents regarding interactions with Kolar and reports of Kolar's misconduct are attached to this Affidavit as Exhibit A. Each of the attached emails were generated and retained in the regular and ordinary course of Ameristar's business.

10. On June 1, 2006, Ameristar's legal department sent a "cease and desist" warning to Kolar via certified mail. Kolar refused delivery of the letter. Ameristar resent the letter to him via facsimile transmission on July 27, 2006 and received confirmation of transmission. True and correct copies of these letters to Kolar and the facsimile transmission confirmation are attached to this Affidavit as Exhibit B. The letters to Kolar and the facsimile transmission confirmation were generated and retained in the regular and ordinary course of Ameristar's business.

AFFIANT FURTHER SAYETH NOT.

CINDY J. SPRINGER
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 09-28-11
Certificate No: 99-58108-1

Brian Repsher

Subscribed and sworn to before me
this ___14th___ day of August, 2008.

_____
Notary Public

3

Exhibit A

**McCaughey, Matthew**

| | |
|---|---|
| **From:** | Kotzian, Nikki |
| **Sent:** | Thursday, May 04, 2006 2:07 PM |
| **To:** | Repsher, Brian; Mendez, Cristen; Chatham, Chris; Manning, Tom; Planck, Kimberly |
| **Cc:** | McCaughey, Matthew; Eagleton, Paul; Herrera, Christy; Jimenez. Jeff; Nicola, Vio |
| **Subject:** | RE: 866 MORE FUN -- PHONE ISSUE |

He has contacted Tammy Crouch, Exec Admin, here in St. Charles and is pretty irate because he was getting nowhere with CB. He said he is going to start being really mean to our guests that call him by mistake. He said that it costs him .20 per call. He wants $100 from us to cover his expenses. He is waiting on a call back from us.

Thanks,
Nikki

-----Original Message-----
**From:** Repsher, Brian
**Sent:** Thursday, May 04, 2006 4:01 PM
**To:** Mendez, Cristen; Kotzian, Nikki; Chatham, Chris; Manning, Tom; Planck, Kimberly
**Cc:** McCaughey, Matthew; Eagleton, Paul; Herrera, Christy; Jimenez, Jeff; Nicola, Vio
**Subject:** 866 MORE FUN -- PHONE ISSUE

Please see email below...

We have an issue where our 866-MORE FUN (667 3386) phone number is one digit off from 866 MR REFUND (677 3386).

MR REFUND has been getting some of our calls from guests misdialing and has been calling the properties to complain. If he speaks to your property, please let me know ASAP as we are formulating our response with Corporate Legal.

Thanks.

Brian

Brian Repsher
VP Research & Analysis
Ameristar Casinos, Inc.
3773 Howard Hughes Parkway
Suite 490S
Las Vegas, NV 89109
P  702.567.7057
F  702.866.6397
C  702.524.4946

-----Original Message-----
**From:** Landolt, Kris
**Sent:** Tuesday, May 02, 2006 3:44 PM
**To:** Repsher, Brian
**Subject:** New toll free number problem in CB

10/18/2007

CB has a little complication going on with our new toll free number. We have a gentleman in Chicago that has a number 1-866- Mr Refund. He is a tax accountant. He called our operators yesterday saying that he was receiving a lot of calls for Ameristar regarding rooms and coupons in CB. His number is one digit off from ours.

PBX gave me his number and I called him yesterday (May 1st). He was upset that he was receiving Ameristar's calls. I told him unfortunately the numbers are correct and the guests are dialing the wrong number and we apologize. He said if this continues, he would start telling arranging hotel rooms for our guests. I calmed him down and we ended our call.

He proceeded to call PBX again this morning, first to remind them he was getting the calls again.
Later PBX received calls regarding room reservations with incorrect confirmation numbers. I proceeded to call Mr. Tax Man again today. I asked him how it was going and if he was receiving any calls today. He said yes and he had mentioned that he would start telling our guests that they had rooms. I told him out of courteousy and fraudulant reasons, that I don't think that would be a great idea. He was calling our guests morans, etc for calling the wrong number. I kept on reminded him that the phone number is correct, we apologize and I told him that he needed to courteous. He told me to stop the lawyer talk and he hung up.

Tom thinks maybe we should write him a letter.
What do you think?

10/18/2007

**To:** Carpenter, Teresa
**Cc:** Hurla, Stephanie; Scheneman, Melissa
**Subject:** RE: Complaint Call

I have forwarded it on to Melissa Scheneman because I am not sure who needs to handle it.
Thank you for the info.

> Megan Fronke
> Marketing Coordinator-KC
> office: (816) 414-7563
> cell: (816) 872-6341
> fax: (816) 414-7221
> megan.fronke@ameristar.com

-----Original Message-----
**From:** Carpenter, Teresa
**Sent:** Friday, May 05, 2006 10:49 AM
**To:** Kinkade, Roxann; Fronke, Megan; Conover, Tavia
**Cc:** Hurla, Stephanie
**Subject:** Complaint Call
**Importance:** High

*I received a call this morning around 6:45am from Mike Kolar.*
*He said he runs his own business and said he is receiving call all hours of the day and night from guests calling 866 more fun.*
*He said the calls are questions about promotions, and complaints about coupons.*
*He seemed to have a sense of humor about it but is also very upset—he said the way his phone service is set up he has to pay for these calls—and feels he should receive some sort of 'bone" (in his words) he mentioned $100-- for having to deal with these people and for so far not getting nasty with them.*
*He would like someone to call him.*

*Teresa Carpenter*
*Hotel-PBX*

10/18/2007

-----Original Message-----
**From:** Manning, Tom
**Sent:** Wednesday, May 31, 2006 12:41 PM
**To:** Repsher, Brian
**Cc:** Landolt, Kris
**Subject:** Mr Refund

We received a call today for a hotel coupon redemption from a gentleman who had inadvertantly called Mr. Refund. He was told that the coupon was a hoax, he could just tear it up and throw it away because there weren't any free hotel rooms. It's been handled and the guest now has the room reserved, but our buddy Mr. R needs a serious talking to. Would you like me to call him, or would it carry more clout if it had the weight of corporate behind it?

10/18/2007

**Springberg, Cindy**

| | |
|---|---|
| **From:** | Preston, Mary |
| **Sent:** | Friday, June 30, 2006 3:44 PM |
| **To:** | McCaughey, Matthew; Springberg, Cindy |
| **Cc:** | Mendez, Cristen |
| **Subject:** | FW: Mr. Ameristar! |

**Importance:** High

-----Original Message-----
From: Davis, Kelvin
Sent: Friday, June 30, 2006 3:43 PM
To: Preston, Mary
Subject: FW: Mr. Ameristar!

Mary FYI

Kelvin

-----Original Message-----
From: Cain, Sara
To: Davis, Kelvin
CC: Hurla, Stephanie; Tate, Quintina
Sent: Fri Jun 30 15:26:29 2006
Subject: Mr. Ameristar!

Hey Kelvin.


Do you remember when we were having problems with that number that is very similar to ours. I believe it is just one number different than ours. Anyways, I got a call today from a woman who wanted to make reservations. This was actually her 2nd time calling and she was calling to complain about the gentleman that she spoke to. When I spoke to her she said she called the number on the coupon and a gentleman picked up. She said she asked for operator CM070F. He then said those coupons are no good. We only send those out to lure problem gamblers in. She said that he referred to himself as Mr. Ameristar.

1

## Springberg, Cindy

| | |
|---|---|
| **From:** | Preston, Mary |
| **Sent:** | Friday, June 30, 2006 4:03 PM |
| **To:** | McCaughey, Matthew; Springberg, Cindy |
| **Cc:** | Mendez, Cristen |
| **Subject:** | FW: Mr. Ameristar AGAIN |

**Importance:** High

-----Original Message-----
From: Davis, Kelvin
Sent: Friday, June 30, 2006 4:02 PM
To: Preston, Mary
Subject: Re: Mr. Ameristar AGAIN

-----Original Message-----
From: Cain, Sara
To: Davis, Kelvin
CC: Hurla, Stephanie; Tate, Quintina
Sent: Fri Jun 30 15:59:41 2006
Subject: Mr. Ameristar AGAIN

I just had another lady call to make a reservation and she said she had just called and got Mr. Ameristar.  She said that he told her "bite me".  He also told her that the coupon she has is no good and that it expires.  He said our rate is $175.00.

-----Original Message-----
From: Manning, Tom
To: Repsher, Brian
CC: Landolt, Kris
Sent: Wed Jul 19 10:14:26 2006
Subject: Mr. Refund is back at it

I just got a note from PBX that a Mrs. Ganow called our toll free number this morning to redeem a hotel offer coupon. She said she spoke with a man who told her the coupon offer was "a scam" and that she could book a room for $250. She said that she didn't want the room at that rate, to which he replied "we don't want you to come here anyway."

Exhibit B



*VIA FACSIMILE –*
*(847) 675-3027 and (847) 675-4989*

July 27, 2006

Michael J. Kolar
The Mr. Refund Company
3458 W. Devon
Lincolnwood, IL 60712-1316

        Re:    CEASE AND DESIST WARNING

Dear Mr. Kolar:

I am the Vice President of Legal Affairs for Ameristar Casinos, Inc. ("Ameristar"). As you may recall, we spoke in May regarding the similarity between your (866) MRREFUND telephone number and Ameristar's (866) MOREFUN number.

During our telephone conversation, you informed me that you have been receiving approximately one wrong number per day from callers who are attempting to reach Ameristar. As I explained during our conversation, Ameristar has no control over the wrong numbers you are receiving. All of our promotional materials accurately identify our 866-MOREFUN number. Neither Ameristar nor any other business can prevent customers from occasionally dialing wrong numbers.

When you and I spoke, I expressed my concern that you had recently called one our casinos and threatened to take hotel reservations from Ameristar customers who accidentally dialed your number. I asked you to agree not to misrepresent yourself or take hotel reservations from our customers who accidentally dial your number. You agreed that you would not do so.

Since our conversation, Ameristar has learned that you are now telling customers who reach your number and ask for Ameristar that Ameristar's number has been disconnected. You have also told Ameristar customers that our coupons are a "hoax" or a "scam" and that we are not offering free hotel rooms. You have also told customers that you are "Mr. Ameristar" and have misrepresented yourself as someone who is affiliated with our company.

Your conduct is fraudulent, malicious and tortious. Ameristar demands that you immediately cease and desist from disseminating any information about Ameristar or

Michael J. Kolar
July 27, 2006
Page 2

falsely representing yourself as someone who can speak on behalf of Ameristar.  I would
recommend that if you receive any wrong numbers, you simply tell the caller that they
have dialed the wrong number, as any reasonable person would do.  If you make any
further false statements about Ameristar, we will sue you personally and The Mr. Refund
Company for injunctive relief, compensatory damages and punitive damages.  Please
consider this to be your final warning and govern yourself accordingly.

Sincerely,

Matthew McCaughey
Vice President of Legal Affairs

07/27/2006 09:13 FAX 7027338478          AMERISTAR LEGAL/F&B 290N                      ☒001

```
                          *********************
                          ***   TX REPORT   ***
                          *********************

          TRANSMISSION OK

          TX/RX NO              4592
          CONNECTION TEL                18476753027
          SUBADDRESS
          CONNECTION ID
          ST. TIME            07/27 09:12
          USAGE T             01'04
          PGS. SENT             3
          RESULT             OK
```



## AMERISTAR
### C A S I N O S

## Facsimile Cover Sheet

| **To:** | Michael J. Kolar, The Mr. Refund Co. | **From:** | Matthew McCaughey - Fax (702) 733-8478 |
|---|---|---|---|
| **Fax:** | (847) 675-3027; (847) 675-4989 | **Pages:** | 3    including cover sheet |
| **Phone:** 1-800-677-3386 | | **Date:** | 7/27/2006 |
| **Re:** | CEASE & DESIST WARNING | **CC:** | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

● **Comments:**

CONFIDENTIALITY NOTICE

The information contained in this facsimile is confidential information and is for the exclusive use of the intended recipient listed above. Any reading, disclosure, use or reproduction of this communication other than by the intended recipient is prohibited. If you have received this communication in error, please notify us by collect telephone call immediately to the sending office above and return the communication to us via U.S. Mail.

07/27/2006 09:15 FAX 7027338478          AMERISTAR LEGAL/F&B 290N                      ☑001

```
                    *********************
                    ***   TX REPORT   ***
                    *********************

        TRANSMISSION OK

        TX/RX NO            4693
        CONNECTION TEL           18476754989
        SUBADDRESS
        CONNECTION ID
        ST. TIME           07/27 09:13
        USAGE T            01'38
        PGS. SENT             3
        RESULT             OK
```



# A M E R I S T A R

### C  A  S  I  N  O  S

## Facsimile Cover Sheet

| **To:** | Michael J. Kolar, The Mr. Refund Co. | **From:** | Matthew McCaughey - Fax (702) 733-8478 |
|---|---|---|---|
| **Fax:** | (847) 675-3027; (847) 675-4989 | **Pages:** 3 | Including cover sheet |
| **Phone:** 1-800-677-3386 | | **Date:** 7/27/2006 | |
| **Re:** | CEASE & DESIST WARNING | **CC:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

---

● **Comments:**

### CONFIDENTIALITY NOTICE

The information contained in this facsimile is confidential information and is for the exclusive use of the intended recipient listed above. Any reading, disclosure, use or reproduction of this communication other than by the intended recipient is prohibited. If you have received this communication in error, please notify us by collect telephone call immediately to the sending office above and return the communication to us via U.S. Mail.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. | ) ) ) | |
| | ) | No. |
| Plaintiffs, | ) ) | |
| | ) | Judge: |
| v. | ) ) | Magistrate Judge |
| MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

### AFFIDAVIT OF DIANNE JACOBSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Dianne Jacobsen, being first duly sworn on oath, certify that the following statements are true and correct.

1.  I am an employee of Plaintiff Ameristar Casino Council Bluffs, Inc. ("ACCB"), a wholly owned subsidiary of Plaintiff Ameristar Casinos, Inc. ("Ameristar"). Since January 2000, I have held the position of Administration Manager for ACCB.

2.  My responsibilities include, but are not limited to, the day-to-day administration of the casino, hotel and entertainment facility operated by ACCB.

3.  As part of my duties, I have care, custody and control of records documenting complaints from guests, and I attend to their resolution.

4.  On or about June 2, 2008, our front desk received a telephone call from Michael Kolar that was transferred to me. The conversation essentially transpired as follows:

a.  He stated that he wanted Amersitar to change its 1-866-MOREFUN number, because he was sick and tired of having to answer our telephone calls.

b.  He said that he had received twelve telephone calls that day and he was sick of it.

c.  He said that he was giving everyone that inadvertently called his number reservations for Ameristar's "king suite".

d.  He made condescending remarks about people who visit casinos.  For example, he stated that he figured gamblers, after pushing buttons all day, couldn't dial a phone correctly.

e.  He stated that he was a multi-millionaire as CEO of Mr. Refund with 200 office locations.

f.  I apologized for his being interrupted by our guest's calls. I stated that I would check with marketing and make sure we had the correct telephone number printed on our mailings.

g.  He stated that this was not a new problem and that it has gone on for years.

h.  He again told me to change Ameristar's number since he had been using his number for sixteen years.

i.  I asked for his name and telephone number in order to contact him regarding this matter.  After giving his name and telephone number, he stated "don't be sending me any subpoenas."

5.   Attached hereto as Exhibit A is a true and accurate copy of a memo I prepared contemporaneously with the June 2, 2008 telephone conversation recording the events occurring during that call in the regular and ordinary course of my employment with ACCB.  This record

2

has been retained by ACCB in the regular and ordinary course of its business since the date of its

creation.

AFFIANT FURTHER SAYETH NOT.

Dianne Jacobsen

Subscribed and sworn to before me
this __1st__ day of August, 2008.

Notary Public



3

Exhibit A

Regarding Phone Call Received on Monday, June 2nd, from Michael Kolar (Mr. Refund)

4:15 p.m. - Doris Sanders, Front Desk Manager, phoned and asked if I would mind taking a guest complaint phone call regarding Ameristar's 800#. She transferred Michael Kolar to me.

At the beginning of the phone conversation, Michael complained about having been transferred to several people to address his issues. When I asked what I could do to assist him, he said, "Change your phone number, I'm sick and tired of having to answer your phone calls. I received twelve calls today, and I'm sick and tired of it. I'm giving everyone I talk to, reservations for your king suite – how do you like that?!" This was the first I was aware of any issues with our incoming phone lines and reservations.

I asked what number Michael was referring to – he stated, "866-Mr. Refund" (866-667-3386). I told him that our (Council Bluffs' 800#) was an 877 # - 877- I'm A Star (877-462-7827) he said it didn't matter, they trunk over to the 866#. I didn't realize he was in fact referring to the Ameristar number 866-More Fun.

Michael ranted for possibly more than fifteen minutes, without me able to say much. He was very condescending, especially about the mentality of "people that visit casinos". He said it figured that gamblers, after punching buttons all day, couldn't dial a phone correctly. He said he was used to those kinds of people, those that received tax refunds under $2,000 – after all, he was a multi-millionaire, the CEO of Mr. Refund, with more than 200 office locations, nationwide - had I heard of him? At one point, someone came into his office while he was talking to me, and he screamed, repeatedly screamed, for them to get out!

I told Michael I was sorry he was experiencing problems and being interrupted by our guest calls, and that I would check with Marketing to see if recent mailings could possibly have our incorrect phone/reservations printed on them. I said I would also relay the information to our general manager, in the morning. Michael said it wasn't a new problem, for years he's received our phone calls,.... "Try our buffet at $15.99, etc....." I again said I would check into it, that I wasn't aware of the problem, and that Ameristar Casino Council Bluffs had the 800 phone number for thirteen years. He said, "Well change it -I've had mine for sixteen years".

I asked Michael if I could have his name and phone number in which to have someone return his call – he stated, "Michael Kolar, 847-675-4983 – and don't be sending me any subpoenas". He started in again about his net worth, at which I decided to end the call.

I spoke with Doris Sanders, and was told he calls PBX often and is often very rude to our guests that may have misdialed our phone number for hotel reservations.

*Dennie Jacobsen*

6/10/08

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. | ) ) ) ) | No. |
| Plaintiffs, | ) ) | Judge: |
| v. | ) ) | Magistrate Judge |
| MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

### AFFIDAVIT OF DORIS SANDERS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Doris Sanders, being first duly sworn on oath, certify that the following statements are true and correct.

1. I am an employee of Plaintiff Ameristar Casino Council Bluffs, Inc. ("ACCB"), a wholly owned subsidiary of Plaintiff Ameristar Casinos, Inc. ("Ameristar"). Since January 2008, I have held the position of Front Office Manager for ACCB.

2. My responsibilities include, but are not limited to, overseeing ACCB's hotel front desk, PBX operators, and valet parking.

3. As part of my duties, I have care, custody and control of records documenting complaints from guests, and I attend to their resolution.

4. On June 2, 2008, our customer service department referred a telephone call to me from someone identifying himself as "Mr. Refund". The conversation essentially transpired as follows:

   a. I told him I would transfer him to the general manager. He replied, "I hope you're not transferring me to Dominos Pizza, because I am a stallion and I don't eat Dominos. I like Pizza Hut."

   b. He stated that he was "tired of people calling his f---ing phone."

   c. He also stated that he was trying to run a business, and he was directing some of the callers to another phone number.

   d. He said that sometimes he just takes the information and lets the callers think they made arrangements with Ameristar Casinos.

   5. Attached hereto as Exhibit A is a true and accurate copy of a memo I prepared contemporaneously with the June 2, 2008 telephone conversation recording the events occurring during that call in the regular and ordinary course of my employment with ACCB. This record has been retained by ACCB in the regular and ordinary course of its business since the date of its creation.

AFFIANT FURTHER SAYETH NOT.



Doris Sanders

Subscribed and sworn to before me this ___ 1st ___ day of August, 2008.

Notary Public

DIANNE M. JACOBSEN
Commission Number 197505
MY COMMISSION EXPIRES
JULY 22, 2009

2

Exhibit A

To Whom It May Concern:

I received a telephone call on June 2, 2008 between 5:15 p.m. and 5:30 p.m. from the person they call Mr. Refund, on this Monday evening he was transferred to me by our helpful customer service person Suellen Dashner regarding the amount of calls he was receiving from Ameristar Casinos from guest wanting to make reservations.   He requested to speak with the General Manager whom at the time was not on property.  I in turn told him I would transfer him to her assistant (Diane Jacobsen).

I told Mr. Refund I was now transferring him, but before I did, he said "I hope you are not transferring me to Dominos Pizza, because I am a stallion and I don't eat Dominos I like Pizza Hut.  He said he was tired of people calling his F—king phone he is trying to run a business and he is directing some of the callers to another phone number.  Mr. Refund also said sometime I just take the information as in listen to the guest and let them think they have made arrangements with Ameristar Casinos.

Sincerely,

Doris Sanders
Front Office Manager Hotel

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. | ) ) ) | |
| | ) | **No.** |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Judge:** |
| | ) | **Magistrate Judge** |
| MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF MELISSA COOPRIDER IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

I, Melissa Cooprider, being first duly sworn on oath, certify that the following statements are true and correct.

1. I am an employee of Plaintiff Ameristar Casino Council Bluffs, Inc. ("ACCB"), a wholly owned subsidiary of Plaintiff Ameristar Casinos, Inc. ("Ameristar"). Since April 2006, I have held the position of Director of Hotel Operations.

2. My responsibilities include, but are not limited to, the day-to-day direction, management, and oversight of ACCB's hotel.

3. As part of my duties, I have care, custody and control of records documenting complaints from guests, and I attend to their resolution.

4. Attached hereto as Exhibit A is a true and correct report from an employee of ACCB, documenting an incident that occurred on August 30, 2007. According to the report, a guest had called what they believed to be the 1-866-MOREFUN number and were given a confirmation number by the call-taker. When the guests arrived at the hotel, the confirmation number did not

comport with Ameristar's confirmation code; therefore, the reservation was invalid. They became very upset. The couple stated that, when they called what they believed to be the 1-866-MOREFUN number, they spoke with a man who would not give his name and did not ask for a credit card number to secure the reservation. ACCB could not accommodate the couple, because the hotel was booked to capacity and the couple's reservation was invalid.

5.    Attached hereto as Exhibit B is a true and correct report from an employee of ACCB, documenting an incident that occurred on August 31, 2007. According to the report, a guest arrived with a confirmation number that did not comport with Ameristar's confirmation code. When they were told that they had no reservation, they became very upset. They said they had called what they believed to be 1-866-MOREFUN and spoke to a man that answered the phone "Hello". According to the report, the man who answered the call did not take a credit card but took their reservation and gave them a fake confirmation code. According to the report, the employee later was informed of a similar incident that occurred the previous day.

6.    Attached hereto as Exhibit C is a true and correct report from an employee of ACCB, documenting an incident that occurred on or about September 26, 2007. According to the report, a woman called to report an incident where her husband tried to make a reservation using a coupon. The man answering the telephone at what he believed to be 1-866-MOREFUN told her husband that the advertised offer was not available. The man took the husband's e-mail address and told him that he would let him know when Ameristar could book the couple's stay. According to the report, when the woman called to follow-up, she reached an Ameristar customer service representative who apologized for the confusion. According to the report, the Ameristar customer service representative assured the woman that the prior call was not with Ameristar's customer service, and that, in fact, the advertised offer was available. The Ameristar customer service representative explained the situation to a supervisor who authorized a complimentary two night stay to the misled couple.

2

7.    Attached hereto as Exhibit D is a true and correct report from a PBX operator for ACCB, documenting an incident that occurred on December 2, 2007.  According to the report, a customer called what she believed was the 1-866-MOREFUN number and reached a fellow who was very rude. He told her that rooms cost $380.00 a night when, in fact, ACCB's rates were much lower than that.  According to the report, the guest was told by the man on the phone that Amersitar does not offer free rooms or coupon rooms; both statements are false.

8.    Attached hereto as Exhibit E is a true and correct report from a PBX operator for ACCB, documenting an incident that occurred on March 3, 2008.  According to the report, a guest called what she believed was 1-866-MOREFUN and stated that she had tried to cancel her reservation. A man answered and said his name was "Borat". He asked her if she had a credit card and inquired as to its credit limit. She told him that it was none of his business, and she hung up on him. She called again to confirm that her reservation had been cancelled, this time reaching Ameristar's 1-866-MOREFUN number.

9.    Each of the attached Exhibits were prepared by ACCB employees contemporaneously with the events described therein in the regular and ordinary course of business.  The records have been retained by ACCB in the regular and ordinary course of its business since the date of their creation.

    AFFIANT FURTHER SAYETH NOT.

                                                    _____
                                                    Melissa Cooprider

Subscribed and sworn to before me
this _____ day of August, 2008.

_____
Notary Public

DIANNE M. JACOBSEN
Commission Number 197506
MY COMMISSION EXPIRES
JULY 22, 2009

I/2190617.1

3

Exhibit A

September 15, 2007

On August 30th I had a couple walk up to check in. I tried to look them up by their last name, and then tried their confirmation number. We also called Ameristar in K.C. to see if the reservation was down there. The confirmation number they had was 6 letters/numbers mixed. I explained they didn't have a reservation and that was not our confirmation code. By then they were very upset. We started to ask many questions, as in who did they speak with, what number was it they called, what time of day was it, to try to figure out which employee it could have been. The number they called was the 1-866-MOREFUN. They said they spoke with a man, around the lunch hour; he didn't give his name, or ask for a credit card. So we started to figure out they must have got the "fake reservation guy." We tried to explain to them its happened before we cant figure out who he is, or how you get connected to him sometimes. We had a full house, and were actually overbooked, so we could not get them into a room at the time. The guest was very very upset and kept insisting for us to get them a room here and kick someone else out, but we could not do that. The guest left very unhappy and confused.

Alicia A Schoon
9-15-07

Exhibit B

Sept 15th 2007

Aug. 31st2007 .We had a couple arrive in the evening. They had a conf.# that had at least
6 numbers. When we tried to explain that there was no reservation for them and we were
booked. They became very upset. They claimed they called 1-866-more-fun and spoke
with a man that answered the phone "Hello". He didn't take a credit card, just made them
a reservation and gave them a conf#.  After calling the Holiday inn and Hampton inn, I
tried calling the phone line myself. I even mixed up the numbers and had no problem
with the phone system. Supervisor Lisa Weber made them a reservation. She said she
handled a guest with the same problem the day before.

Katey Heinsen
9-15-07

Exhibit C

9/26/2007
4:09:25 PM

**Kelly Kulesa, Michael Moriarty, Tom Manning, and Melissa Cooprider :**

Mrs. Kelly Sejkora called approximately 2:45 pm to report an incident that occurred mid September. Her husband, Mr. Douglas Sejkora, tried to make a reservation with his wife's coupon. He made the call in the evening and reached a gentleman stating that the date Mr. Sejkora requested was not available. The "Ameristar reservationist" proceeded to get Mr. Sejkora's e-mail address, to let him know when we would be able to book their stay. The guest was told the coupon he had was good for two free nights.

I, Linda Lyman, assured Mrs. Kelly Sejkora that we do not operate with that total lack of respect for our guest. We take a great deal of pride in guest service. I was pretty convinced by the story she relayed to me that this was a business man from Chicago that has a toll free number close to ours and has caused us problems in the past. I assured her none of her information was compromised and I would pass this information on to the appropriate sources.

Solution: I booked the Sejkora family on their free room coupon for the 3rd of October. Called Denise Wyatt to see who took over the handling of this gentleman's interference in our guest service , Kris Landolt had been in contact with this gentleman and Ameristar Corporate in the past. Mr. Moriarty and Mr. Manning  put me on speaker phone and I explained the details I was aware of. Mr. Moriarty called the guest  and brought me up a manual comp for the guest to stay the 19th and 20th of October under his card.

I was requested to make the reservation, call the Mrs. Sejkora, and write a report on the problem. The Sejkora family is very pleased with the way Ameristar handled their experience, will contact Mr. Moriarty if they receive any form of contact from this man.

Thank you,

Linda Lyman (PBX)

Exhibit D

```
GM1G    12/02/2007        Ameristar Casino Hotel           13:41:50    GINFO

CMD
AR 120707 Fri DP 120807 Sat      A/C  2            RP FREE1  GP ........  RB .
STATUS G GTD    ACT  C/S FREE1.....  PCT 144407074   PC2 ...............
WG TYPE ROOM#       RATE A/C
AC NO ........  139.00  2 .         OVRID .   NET N PRT Y TRN . NRG .

LAS▓▓▓▓▓▓▓▓▓▓▓....  FIRST FRANCES....    TITLE ...  GTYP .
COMPANY .................  ATTN 6P.M.CXL...AACD      TYP H/B H
ADR1/2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓         LNG .
CITY ATLANTIC....  STATE/PROV IA  ZIP 500222138  COUNTRY US
                                          ADDL NAMES
PHONE   ▓▓▓▓▓▓▓▓▓▓▓  X ..     VIP .  PC .  SRC DM  RSN .  PRM HST N
    GUEST CREDIT INFORMATION      GROUP B/C
STL MTH RDS NBR ▓▓▓▓▓      EXP **** AUTH CREDIT
CRDT LMT .........01  CHECK LMT ........0.0   CONF# HBR2G
DEP REQ AMT ......00  O/R . REQ DATE ........   POST#
DEP REC AMT ......00       REC DATE ........   CNCL#
ADV CODE      X-C/O N  TAX EXEMPT N  REF .      CRID ▓▓▓▓▓▓▓▓▓
CAS# 144407074 AUTH F#OV  GRP B/C O/R ....  STR/DT ....  END/DT ....
   FRANCES ▓▓▓▓▓▓▓ has been CHANGED
^Swipe Credit Card     13 14 15 16 17 18 19 20 21 22 23 24  F21=Fun Key Desc
ACTIVE FUNCTION KEYS    1  2  3  4  5  6  7  8  9 10 11 12
```

12/2/07

Kelly,

This guest was very upset when she got hold of me. She had called 866-Morefun and that fellow was very rude to her. Said the room would cost her $380.00. He also said there was no free rooms and no coupon rooms. She has everything written down from start to finish of their conversation, and said she thanked me for being courteous and said she almost didn't call here because she was so upset. I did give her our # 877-462-7827. If you have any questions please call me.

JoAnne ~ PBK

Exhibit E

```
GM1G    3/03/2008              Ameristar Casino Hotel           08:41:51      GINFO
CMD                            RESERVATION CHANGE  394720914233
AR  31808 Tue DP  31908 Wed        A/C  2           RP RACK     GP          RB
STATUS X  CXL        ACT    C/S STARCARD    PCI 144110427    PC2
WG TYPE ROOM#          RATE A/C
AC QQ                      .00  2                   OVRID _   NET N PRT Y TRN _  NRG _

LAST  ████████      FIRST LOLA AND GALEN          TITLE          GTYP

COMPANY                       ATTN LOLA ████████            TYP H/B  H
ADR1/2 PO BOX 491
CITY ████████       STATE/PROV IA  ZIP 501630491  COUNTRY        LNG

PHONE     ████████1 X           VIP   PC    SRC  AR  RSN      PRM HST N
        GUEST CREDIT INFORMATION      GROUP B/C
STL MTH RVL NBR ████████                    EXP  ****   AUTH    CREDIT
CRDT LMT       .01  CHECK LMT       .00     CONF# WKSSC
DEP REQ AMT    .00  C/F  REQ DATE           POST#
DEP REC AMT    .00       REC DATE           ENCLE F5YFC
ADV CODE    II E T O N  TAX EXEMPT N  REF           CRTD JL012608
CASE#        AUTH PROV  GRI E O R           STR/DT          END/DT

 Swipe Credit Card      13 14 15 16 17 18 19 20 21 22 23 24   F21=Fun Key Desc
ACTIVE FUNCTION KEYS     1  2  3  4  5  6  7  8  9 10 11 12
```

... named reservation and tried to cancel his
reservation on 3/3/08 at night. She got hold
of someone who said his name was Brandon
he asked her if she had a credit card and
what the limit was on it. She told him
that was none of his business and
hung up on him.

She called this morning 3/3/08 and
she called this morning 3/3/08 and wanted to know if her reg was cancelled,
and wanted to know if her reg was cancelled. Of course it was not. She cancelled it.

Joe Anne PBX

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERISTAR CASINOS, INC. and AMERISTAR CASINO COUNCIL BLUFFS, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | No. |
| v. | ) ) | Judge: |
| MICHAEL J. KOLAR, individually and doing business as THE MR. REFUND COMPANY, | ) ) ) ) | Magistrate Judge |
| Defendant. | ) ) | |

## AFFIDAVIT OF LISA YOUNG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Lisa Young, being first duly sworn on oath, certify that the following statements are true and correct.

1.    I am an employee of Ameristar Casino St. Charles, Inc. ("ACSC"), a wholly owned subsidiary of Plaintiff Ameristar Casinos, Inc. ("Ameristar"). I currently hold the position of Table Games Training Manager for ACSC.

2.    As part of my duties as Table Games Training Manager for ACSC, I attend to guest complaints and their resolution.

3.    On July 10, 2008, I received a customer complaint from customers Maria Colombo and Rose Colombo. The conversation essentially transpired as follows:

    a.  Maria Colombo said that she attempted to contact Ameristar on July 9, 2008 by
        calling the 866-MORE-FUN number.  Maria Colombo was calling to inquire
        about purchasing something from ACSC's gift shop with a check

b. Maria Colombo said that a gentleman answered the call. When Maria Colombo inquired about using a check at ACSC's gift shop, the recipient of the call began to belittle her.

c. The recipient of the phone call inquired about how much money Maria Colombo had in her account, and said that if she didn't have enough money in her account, she shouldn't write checks. The recipient of the phone call said that Ameristar has people write bad checks all of the time and that "we" end up out the money because of people like her.

d. When Maria Colombo got off the phone she told her mother, Rose Colombo, the story.

e. Rose Colombo, after hearing her daughter's story, decided to call back and speak to the gentleman. When Rose Colombo called, the recipient of the phone call stated he just spoke to her.

f. Rose Colombo asked the recipient of the phone call what his name was and he said, "You know my name. It's Mr. Refund." Rose Colombo told "Mr. Refund" that he had no right to speak to her daughter in the manner that he had done. He responded with, "I don't normally deal with people like you, I deal with elite people. I know how trailer trash like you operates. Do you live in a single wide or double wide."

g. "Mr. Refund" then began to inquire how much money Rose Colombo had in her accounts and if she had credit cards.

h. Rose Colombo was terribly upset about the incident. After hearing both of their stories, I apologized profusely to the ladies and assured them that we do not treat

2

people in that manner. I also wrote each of them a $50.00 comp and again apologized and explained that the comps could in no way make up for the way they had been treated on the phone. I then escorted them to the gift shop to inquire whether or not we accept checks, since they never received the answer to their question. I informed them that we would investigate the incident and invited them back.

4.    Attached hereto as Exhibit A is a true and accurate copy of a memo I prepared shortly after my July 10, 2008 meeting with Maria Colombo and Rose Colombo, recording the events occurring during that meeting, in the regular and ordinary course of my employment with ACSC.  This record has been retained by ACSC in the regular and ordinary course of its business since the date of its creation.

AFFIANT FURTHER SAYETH NOT.

Lisa Young

Subscribed and sworn to before me
this __12th__ day of August, 2008.

Notary Public

TAMMY R. CROUCH
Notary Public-Notary Seal
State of Missouri, Lincoln County
Commission # 05807985
My Commission Expires Dec 11, 2009

3

I/2190634.1

To Whom It May Concern:

I received a call today July 10, 2008, on the Table Games shift phone at 12:30pm. There were two guests that had a complaint and wished to speak to a manager. When I arrived at the turnstiles, I was introduced to Maria and Rose Colombo. I introduced myself and inquired about their complaint.

Maria Colombo (███████) began to tell me that her and her mother, Rose, had come in on Wednesday for her birthday. When they left for the evening they had stopped by the gift shop. While there, Maria had seen a purse that she liked, but decided not to purchase it at that time. When they got home, she decided she really wanted the purse, but did not know if the gift shop would accept a check for the purchase. She decided to call Ameristar and find out, before driving out here and wasting gas. She did not have the direct number, so she called the 866-MORE-FUN number on the back of her boarding pass at 9:30pm. A gentleman answered the call. Maria inquired about purchasing something from the gift shop with a check and man on the phone began to belittle her. He inquired about how much money she had in her account and that if she didn't have enough money in her account she shouldn't write checks. The company has people write bad checks all of the time and we end up out the money because of people like her. She stated that she had enough money in her account and that she doesn't write bad checks. The gentleman went on to say should use her credit card if she had enough credit available. She responded by telling him she didn't want to use her credit card, and that she had the money available in her checking account. She became upset and ended the call. When she got off the phone she told her mother, Rose, the story.

Rose Colombo (███████) after hearing her daughter's story decided to call back and speak to the gentleman. When she called, the man stated he just spoke to her. Rose informed him that he had not. The gentleman said I know that I did because it is the same phone number. Rose informed him that they lived together. Rose asked him what his name was and he said, "You know my name. It's Mr. Refund". Rose began to tell him that he had no right to speak to her daughter in the manner that he had done. He responded with, "I don't normally deal with people like you, I deal with elite people. I know how trailer trash like you operates. Do you live in a single wide or double wide". Rose responded that she did not live in a trailer, she owned her home and that she lived in a nice area. He continued on calling by calling her a Hoosier. He then began to inquire how much money she had in her accounts and if she had credit cards. Rose was terribly upset and explained that she doesn't spend a lot of money at the casino, but she was not trailer trash. Mr. Refund also informed Rose that he was a billionaire. She did not believe this to be true, since he was answering phones.

After hearing both of their stories, I apologized profusely to the ladies and assured them that we do not treat people in that manner. I also, wrote each of them a $50.00 comp and again apologized and explained that the comps could in no way make up for the way they had been treated on the phone. I then escorted them to the gift shop to inquire whether or not we accept checks, since they never received the answer to their question. I informed them that we would investigate the incident and invited them back. I also gave them my

business card and told them if they ever had any other issued to feel free to contact me. I asked for their phone numbers so that I could follow up with them after I investigated the matter. Rose and Maria's home number is ██████████. Rose's cell phone number is ██████████

Sincerely,

*Lisa Young*
Lisa Young
Table Games Training Manager